Martin A. Bihn (014338)
Donna M. McDaniel (017366)
**BIHN & McDANIEL, P.L.C.**
2600 N. Central Ave, Suite 1775
Phoenix, Arizona 85004
Tel: (602) 248 9779
Fax: (602) 248 9749
Email:   MBihn@phxlegal.com
             Donna@phxlegal.com
Attorneys for Plaintiff Clint Peterson

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Clint Peterson;<br><br>        Plaintiff,<br>vs.<br><br>Town of Superior, a political subdivision, Joel Christian Ensley, Anthony Doran, Angela Gill, B. Marsden, Martin Sosa;<br><br>        Defendants. | CV:<br><br>**COMPLAINT**<br>**AND**<br>**JURY DEMAND** |

Plaintiff, for his complaint against defendants alleges as follows:

## Introduction

1. Plaintiff brings this suit against five small town police officers who engaged in a parade of illegal conduct. Defendant police officers illegally seized, beat, and arrested plaintiff; and then caused baseless criminal prosecution to be brought against him. Defendant police officers seized, beat and arrested plaintiff in the police station lobby within two minutes of plaintiff's arrival. Plaintiff came to the police station to secure the release of a friend who, hours earlier, had been seized, beaten, tased and arrested by defendants. All defendants subsequently lied in their official police reports causing felony charges to be

brought against plaintiff. The criminal case against plaintiff was dismissed after prosecutor reviewed the officer body-cam video of the incident. Plaintiff now brings this 42 USC § 1983 action against defendants and their employer.

**Parties, Venue & Jurisdiction**

2. Plaintiff Clint Peterson is an electrician who lives in Apache Junction, Arizona.

3. Defendant Town of Superior is a body politic.

4. Defendant Joel Christian Ensley ("Ensley") is an Arizona resident and is employed as a police officer with the Town of Superior. Ensley had been placed on the Gila County *Brady* list for misconduct related to a false warrant affidavit and had been fired by a second law enforcement agency for lying on his employment application.

5. Defendant Anthony Doran ("Doran") is an Arizona resident and was employed as a police commander with the Town of Superior. Doran was previously suspended by AZPOST for six months for engaging in malfeasance misfeasance or nonfeasance in office. Doran was fired by the Town of Superior about a year after the incident giving rise to this action. Doran was fired after the Town discovered that Doran: (1) maintained a secret 36 gigabyte cache of pornography on his work computer, (2) used his Officer Body Camera make a video himself having sex in uniform while on duty, and (3) used his Officer Body Camera to make additional sexually explicit videos of himself. Doran AZPOST's certification has been revoked.

6. Defendant Angela Gill ("Gill") is an Arizona resident and is employed as a police officer with the Town of Superior.

7. Defendant B. Marsden ("Marsden") is an Arizona resident and is employed as a police officer with the Town of Superior.

8. Defendant Martin Sosa ("Sosa") is an Arizona resident and is employed as a police officer with the Town of Superior. Defendant Sosa was dismissed from the Phoenix police department after being charged with felonious unlawful flight from police and extreme DUI. Sosa is on the Pinal County *Brady* list and

9. Defendants caused events to occur within Arizona out of which this matter arises.

10. At all relevant times defendants, Ensley, Doran, Gill, Marsden and Sosa were acting within the course and scope of their employment,

11. At all relevant times the conduct of individual defendants Ensley, Doran, Gill, Marsden and Sosa conformed to the Town of Superior's policies, customs or practices.

12. This Court has jurisdiction of Plaintiff's federal law claims pursuant to 28 USC § 1331.

**Common Factual Allegations**

13. On March 10, 2017 Plaintiff Clint Peterson was at home in Apache Junction.

14. Peterson's friend, Aaron Maughan, visited Peterson in Apache Junction and stayed until late in the evening.

15. Maughan left Peterson's home and drove toward the Town of Superior.

16. As Maughan drove through the Town of Superior, officers of the Superior Police Department ("SPD") tried to stop Maughan.

17. Maughan failed to stop for the police.

3

18. Maughan eluded the police, exited his vehicle, made his way to the Town of Superior and hid.

19. The next morning, Maughan telephoned Peterson from a convenience store in the Town of Superior.

20. In fact, the store clerk let Maughan borrow his phone to make the call to Peterson to ask for a ride.

21. Peterson then had a friend to drive him to the convenience store in Superior to pick up Maughan.

22. When they arrived at the convenience store in Superior, Maughan was nowhere to be found.

23. Peterson asked the Circle K clerk if he had seen his friend, Maughan.

24. The clerk told Peterson that Maughan had been had beaten, tased, arrested by SPD officers.

25. Peterson was under the impression that Maughan had been arrested for public intoxication.

26. Peterson then decided he would go to the SPD to see if he could pick up Maughan after he was released by the police department.

27. Peterson was driven to the SPD.

28. Peterson entered the visitor area of the SPD and spoke with defendant Gill.

29. Peterson told Gill that he was at the SPD to pick up Maughan.

30. Gill told Peterson to wait and then began calling out to defendant Ensley to come to the front desk.

BIHN & McDANIEL, P.L.C.
ATTORNEYS AT LAW
SUITE 1775
2600 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85004
(602) 248-9779

4

31. Ensley approached Peterson and ordered him to produce identification.

32. When Peterson did not immediately produce identification, Ensley grabbed Peterson and placed him in an arm-hold.

33. Peterson stated his name and Ensley released his arm.

34. Ensley told Peterson that Maughan had been arrested for leading police on a high speed chase the night before.

35. This was the first time that Peterson learned why Maughan had been arrested.

36. Peterson told Ensley that Maughan didn't engage in the high speed chase because Maughan had been at Peterson's house the night before.

37. At that point Ensley and Gill grabbed Peterson yelled that he was under arrest and threw him to the floor.

38. Doran, Marsden and Sosa also jumped on top of Peterson.

39. Defendants all gang tackled Peterson.

40. All defendants began yelling "stop resisting" as they punched Peterson.

41. Peterson did not resist at all and was actually dumbfounded that he was being thrown to the floor and arrested.

42. Peterson was taken to the Pinal County Jail where he was held until he bonded out.

43. Ensley, Doran, Gill, Marsden and Sosa all prepared reports of the incident.

44. Each defendant lied in his or her report.

45. Each defendant made statements in his or her report that is directly contravened by the video recording of the incident.

46. Defendants through their false and deceptive police reports were the moving force in getting charges brought against Peterson.

47. Peterson was charged with two felonies, - resisting arrest and obstructing a criminal investigation.

48. Peterson was offered a plea of 6 months jail.

49. The criminal case against Peterson was ultimately dismissed, upon information and belief, once the prosecutor reviewed the body-cam video and recognized that there was no basis for the charges and that the police officers had lied in their reports.

## COUNT I

### 42 USC § 1983 FOURTH and FOURTEENTH AMENDMENTS

### Illegal Seizure-Arrest/False Imprisonment/Excessive Force

### Against Ensley, Doran, Gill, Marsden, and Sosa

50. Defendants acted individually and/or in concert and/or set events in motion to deprive plaintiff of his rights, privileges or immunities secured by US Constitution, including but not limited to the Fourth and Fourteenth Amendments.

Illegal Seizure-Arrest

51. Defendants arrested plaintiff without probable cause or any other justification.

52. No valid arrest warrant existed, plaintiff had not committed any offense, and no probable cause existed for his arrest. Plaintiff's arrest was unlawful and deprived him of rights secured by the Fourth and Fourteenth Amendments of the US Constitution.

53. Defendants are not entitled to qualified immunity. At the time defendants arrested plaintiff the law was clearly established that police officers could only make arrests

6

1  supported by probable cause or an arrest warrant, - neither of which existed with respect to
2  plaintiff.

3  54.  Plaintiff suffered damages as a result of defendants' unconstitutional actions.

4  55.  Defendants acted with reckless and callous indifference to plaintiff's federally
5  protected rights entitling plaintiff to punitive damages against each of them.

### False Imprisonment

7  56.  After arresting Plaintiff, defendants falsely imprisoned plaintiff, initially
8  holding plaintiff in a cell at SPD and transferring him to the Pinal County Jail.

9  57.  Defendants' actions were unreasonable and deprived plaintiff of his rights
10 under the Fourth and Fourteenth Amendments.

11 58.  No reasonable suspicion, probable cause or any other legal justification existed
12 for the seizure and false imprisonment.

13 59.  Plaintiff suffered damages as a result of defendants' unconstitutional actions.

14 60.  Defendants acted with reckless and callous indifference to plaintiff's federally
15 protected rights entitling plaintiff to punitive damages against each of them.

### Excessive Force

19 61.  Defendants used excessive and objectively unreasonable force against plaintiff
20 in violation of his Fourth and Fourteenth Amendment rights including but necessarily limited
21 to gang tackling the plaintiff, jumping on top of him and punching him.

62. Defendants had no probable cause or even reasonable suspicion to believe plaintiff had committed any crime whatsoever. Defendants knew plaintiff posed no immediate threat to the safety of officers or the public, was not resisting the defendants and was not attempting to evade the defendants.

63. Defendants are not entitled to qualified immunity. At the time defendants used excessive force on plaintiff the law was clearly established that such actions amounted to unconstitutional excessive force.

64. Plaintiff suffered damages as a result of defendants' unconstitutional actions.

65. Defendants acted with reckless and callous indifference to plaintiff's federally protected rights entitling plaintiff to punitive damages against each of them.

## COUNT II

42 USC 1983 Malicious Prosecution

**Against Ensley, Doran, Gill, Marsden, and Sosa**

66. Plaintiff realleges paragraphs 1 through 70 as if fully set forth herein.

67. In March 2017, defendants filed a criminal complaint against Plaintiff, wrongfully initiating the criminal prosecution.

68. The prosecution was terminated in Plaintiff's favor when it was dismissed in August of 2017.

69. The defendants had no probable cause for the arrest and prosecution. Defendants created probable cause by drafting their reports falsely indicating that plaintiff had: (1) resisted arrest and had obstructed a criminal investigation.

70. Defendants initiated the case with malice, ie they made intentional and knowingly false statements in their police reports and so knowingly provided false information to the prosecutor.

71. Defendants initiated the prosecution of plaintiff with malice and without probable cause violating plaintiff's Fourth and Fourteenth Amendment rights.

72. As a result of defendants' conduct plaintiff was damaged.

73. Defendants acted with reckless and callous indifference to plaintiff's federally protected rights entitling plaintiff to punitive damages against each of them.

## COUNT THREE

### *MONELL* CLAIM AGAINST TOWN

74. Plaintiff realleges paragraphs 1 through 75 as if fully set forth herein.

75. The Town of Superior ("Town") is a "person" within the meaning of 42 USC § 1983.

76. The Town has a municipal policy and/or custom of hiring substandard police officers who have extensive misconduct records at other police agencies.

77. The Town's former police chief referred to the Town's police department as an, "island of misfit toys" because it is a "second-chance agency" hiring officers with extensive misconduct records who cannot otherwise get jobs as police officers.

78. The Town hires substandard officers with extensive misconduct records to save money. The Town has deliberately chosen to offer below-market wages for police officers.

9

79. The Town knows that officers with misconduct records who cannot otherwise get jobs as police officers will accept the below-market wages offered by the Town.

80. The Town has made the deliberate choice to save money by staffing its police department with substandard officers who have misconduct records.

81. Upon information and belief, once defendant Town hires these substandard "second-chance" officers it fails to appropriately train/retrain them in appropriate police practices including warrants and use of force matters.

82. The Town's hiring of substandard second-chance officers and failure to train/retrain them reflects a deliberate and conscious choice by the Town and represents its deliberate indifference to the rights of its inhabitants including plaintiff.

83. The Town's hiring of substandard officers and failure to train them to reasonable standards, particularly in warrants and use of force matters led directly to the defendants officers' depriving plaintiff of his civil rights by: (1) arresting plaintiff without probable cause (or any cause), (2) using excessive, unnecessary and unreasonable force on plaintiff when he presented no threat to defendants, (3) searching plaintiff after his illegal arrest, (4) lying in their police reports to a malicious prosecution.

84. Had defendant Town hired competent officers and/or retrained their substandard officers to competency in arrest and use of force areas, plaintiff's civil rights would not have been violated.

85. As a result plaintiff has been harmed.

**WHEREFORE**, Plaintiff prays that this Court enters judgment for the Plaintiff and against each of the Defendants and grant:

1. A. compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

E. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law; and,

F. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**JURY DEMAND**

1. Plaintiff demands a jury trial on all issues.

Dated this 8th day of March, 2019.

BIHN & McDANIEL, P.L.C.

/s/ Martin A. Bihn
Martin A. Bihn